

FILED

July 27, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:40 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Bobby James<br>          Employee,<br>v.<br><br>Landair Transport, Inc.<br>          Employer,<br>And<br><br>Starnet Ins. Co./Key Risk<br>          Insurance Carrier/<br>          Administrator. | Docket No.: 2015-02-0024<br><br>State File No.: 76452-2014<br><br>Date of Injury: August 20, 2014<br><br>Judge: Brian K. Addington |

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF
## (RECORD REVIEW ONLY)

THIS CAUSE came before the undersigned Workers' Compensation Judge on July 15, 2015, upon the Request for Expedited Hearing (REH) filed by Bobby James (Mr. James), the Employee, on June 23, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Landair Transport, Inc. (Landair), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. James is not entitled to the requested medical and temporary disability benefits.

## ANALYSIS

### Issues

1. *Whether Mr. James sustained an injury that arose primarily out of and in the course and scope of employment with Landair.*

2. *Whether Landair is obligated to provide a panel of physicians upon notice from Mr. James of an alleged injury.*

1

3. *Whether Landair is obligated to pay for any past medical expenses and/or mileage expenses.*

4. *Whether Mr. James is entitled to additional medical care as recommended by a physician.*

5. *Whether Mr. James is entitled to any past or future temporary total disability benefits, and if so, in what amount.*

6. *Whether Mr. James is entitled to any past or future temporary partial disability benefits, and if so, in what amount.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. First Report of Injury;
2. Police Report four;
3. Medical Records: UNC Health Care (UNC) submitted by Mr. James;
4. Medical Bills from various providers;
5. Medical Records: Tacoma/Industricare (Tacoma);
6. Medical Records: UNC submitted by Landair;
7. Medical Records: WakeMed Health and Hospitals (WakeMed);
8. Medical Records: UNC-Physical Medicine and Rehab (UNC-PR) and,
9. Medical Records: Raleigh Orthopedic Therapy Services (ROTS).

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), February 6, 2015
- Dispute Certification Notice (DCN), April 23, 2015
- REH, June 23, 2015
- Landair's Response to the REH, June 30, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

## History of Claim

Mr. James is a forty-two-year-old resident of Raleigh, North Carolina. He drove trucks for Landair. Mr. James alleged he suffered an injury on August 20, 2014, as a result of an automobile accident while transporting a load for Landair. The police report indicated Mr. James did not suffer injury. (Ex. 4, p. 2). Mr. James, however, reported to

Landair that he blacked out. (Ex. 1).

Mr. James sought treatment at Tacoma. It is unclear from the record whether Mr. James chose Tacoma from a panel of physicians; however, Landair authorized the treatment. Mr. James told PA-C Dennis Volek that he hit his head on the steering wheel and suffered minimal neck pain. (Ex. 5, p. 1). Diagnostic testing revealed no acute injury but did indicate degenerative and congenital conditions. (*Id.*, pp. 8-9). Dr. Remy Sagadraca, the supervising physician, diagnosed cervical and back sprains and prescribed pain medication. (*Id.*, p. 25). Tacoma scheduled a follow-up appointment and therapy with Dr. William Filer at UNC-PR in Raleigh, North Carolina. (*Id.*, p. 34). Tacoma gave Ms. James conflicting instructions regarding his work status. One document released him to work with no restrictions and the other document recommended that he not work until his appointment with Dr. Filer on September 30, 2014. (*Id.*, pp.26, 34).[1]

When Mr. James attempted a return to work, Landair became concerned about his behavior and requested a medical clearance. (Ex. 7, p. 1).

On September 3, 2014, Mr. James went to the emergency room at UNC with complaints of headache, photophobia, memory problems, and generalized body aches for a week's duration. (Ex. 6, p. 1). CT results were negative. (*Id.*, p. 11). The discharge diagnosis was migraine. (*Id.*, p. 12). Mr. James underwent an MRI of the head at UNC on September 16, 2014. The MRI indicated no abnormalities. (*Id.*, p. 17).

Mr. James underwent a neurological consult with Dr. John Mann on September 17, 2014. Mr. James complained of memory loss and head, neck, and back pain. (*Id.*, p. 29). Dr. Mann diagnosed confusion, altered mental status, and probable post-traumatic brain injury. (*Id.*, p. 33). UNC recommended that Mr. James see Dr. Filer. (*Id.*, p. 82).

On September 25, 2014, Mr. James appeared at the emergency room at WakeMed and discussed a history of dizziness, falling, blurred vision, and headache prior to the incident in question, and headache, nausea, vomiting, and confusion following the accident. (Ex. 7, p. 1). Mr. James had a normal CT scan and EKG. Dr. Cecilia McKay's impression was "[a]ltered mentation after trauma from motor vehicle accident on 08/20/2014, history of recurrent head trauma and past loss of conscious and headaches." (*Id.*, p. 2). Dr. McKay recommended a neurological consult and EEG. *Id.* Dr. David Konanc performed the EEG that day with normal results. (*Id.*, p. 11). Dr. James Ferrell's physician assistant, Thomas Binford, performed Mr. James' neurologic evaluation. He believed Mr. James had suffered a concussion during the incident in question and suffered an altered mental state with headache. (*Id.*, p. 6).

Mr. James met with Dr. Filer on September 30, 2014, with a complaint of a

---

[1] It appears to the Court that p. 34 of Exhibit 5 may belong with Exhibit 6, the records from UNC.

headache, memory loss, and sleep impairment. (Ex. 8, p. 4). Mr. James underwent diagnostic and neuropsychological testing over the following months. Dr. Filer took Mr. James off work from November 19, 2014, until he completed testing. (Ex. 3, p. 7). Dr. Filer determined on January 20, 2015, that Mr. James suffered mood disorder that was unlikely to be due to on-going, post-concussive disorder. (Ex. 8, p. 28). On February 10, 2015, Dr. Filler last met with Mr. James. He noted Mr. James suffered a recent syncope incident at the facility but opined that the August 20, 2014 incident did not cause the syncopal event. (*Id.*, p. 91). Dr. Filler made a referral to a pain clinic. He determined Mr. James did not have any work restrictions due to the event of August 20, 2014. *Id.*

Mr. James filed a PBD on February 6, 2015, seeking medical/temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on April 23, 2015. Mr. James requested the record review on June 23, 2015.

## Mr. James' Contentions

Mr. James asserts that he suffered an injury on August 20, 2014. He avers that he is entitled to ongoing medical treatment. He contends that authorized treating physicians had restricted him from all work activities since August 20, 2014. He requests temporary total disability benefits since he has been unable to work.[2]

## Landair's Contentions

Landair acknowledges that Mr. James was involved in an automobile accident on August 20, 2014, but asserts that he did not miss any work due to the accident. Landair contends that the August 20, 2014 event did not cause Mr. James' alleged mental injury. Landair avers that Mr. James' non-work related psychological issues caused his absences from work; therefore, Mr. James is not entitled to temporary disability benefits.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

---

2 The Court took Mr. James' contentions from the PBD. Mr. James did not file a pre-hearing statement or brief.

At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

Mr. James was involved in a motor vehicle accident (MVA) on August 20, 2014, while driving for Landair. He suffered no injury in the accident, but Mr. James later had symptoms of back pain neck pain and memory loss he associated with the MVA. Landair initially paid for Mr. James' treatment at Tacoma and for physical therapy. Mr. James had pre-existing memory loss, head trauma, and associated symptoms related to head trauma. Mr. James did not miss any work due to the August 20, 2014 injury.

*Application of Law to Facts*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment [.]" Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence. *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all cause [.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

At various times, Mr. James changed his story regarding what happened to him on August 20, 2014. He told the officer who investigated the MVA that he was not injured. He told the providers at Tacoma that he hit his head on the steering wheel. He told Landair that he blacked out. Mr. James has not presented sufficient evidence to prove he suffered a physical injury at work. All diagnostic testing has been normal. Tacoma records do not indicate any injury (bruising, cuts, etc.) to Mr. James' head from hitting it on a steering wheel. Mr. James presented to medical providers with only subjective complaints.

Concerning his alleged mental injury, Mr. James has a history of pre-existing head trauma and mental conditions. An employee may suffer a mental injury as a result of a compensable physical injury or an identifiable work-related event resulting in sudden or unusual stimulus. Tenn. Code Ann. § 50-6-102(16)(2014). Although Mr. James continues to complain of symptoms, Dr. Filer opined he suffers from a mood disorder not related to the MVA.

Mr. James has not come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits.

5

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. James' claim against Landair and its workers' compensation carrier for the requested medical and temporary disability benefits is denied. At this time, Mr. James has not come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits.

2. This matter is set for Initial Hearing on September 14, 2015, at 2:00 p.m.

**ENTERED this the 27th day of July 2015.**

_____

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment

must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of July, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| V. Hood-Schneider, Esq. | | | X | vhslaw1@gmail.com |
| Mike Jones, Esq. | | | X | mjones@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8